IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARY CAROL S. JOHNSON; JAMES W. SMITH; MARIAN S. BARNWELL; BILLIE ANN S. DEVINE; and EVE H. SMITH,<br><br>Defendants. | **AMENDED MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:11-CV-00087<br><br>Judge Clark Waddoups |

## INTRODUCTION

The United States has brought this action against Defendants for the collection of an estate tax deficiency owed by the estate of Anna S. Smith.  Defendants have moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Government has failed to state a claim upon which relief can be granted.  (Dkt. No. 31.)  For the reasons discussed below, the court grants in part and denies in part Defendants' motion to dismiss.[1]

## FACTUAL BACKGROUND

Anna S. Smith ("Decedent") died testate on September 2, 1991.  She was survived by her children Mary Carol S. Johnson ("Johnson"), James W. Smith ("Smith"), Marian S, Barnwell ("Barnwell"), and Billie Ann S. Devine ("Devine").  The surviving children are the Decedent's

---

[1] Pursuant to Federal Rule of Civil Procedure 54(b), this Amended Memorandum Decision and Order supersedes the court's previous memorandum decision issued on May 23, 2012. Only section III of the court's ruling has been amended.

Heirs and Defendants in this action.[2]  Prior to her death, the Decedent executed a Last Will and

Testament and established the Anna Smith Family Trust (the "Trust").  Johnson and Smith are

named as the personal representatives of the Decedent's Estate and are also the trustees of the

Trust (hereinafter the "Personal Representatives" or "Trustees").

The Will directed the Personal Representatives to ensure that the Decedent's "debts, last

illness, and funeral and burial expenses be paid as soon after [her] death as reasonably

convenient."  Will, ¶ II (Dkt. No. 32, Ex. A).  While the Will did not expressly direct the

Personal Representatives to pay any federal estate tax levied against the Estate, it stated that

"claims against [the] estate" may be settled and discharged in the "absolute discretion of [the]

Personal Representatives."  *Id*.  The Will finally directed that the "rest and residue" of the Estate

be delivered to the Trustees to be added to the principal of the Trust and administered in

accordance with the provisions of the trust agreement.  *Id.* ¶ V.

The Trust was governed by the Second Amended Trust Agreement (the "Trust

Agreement").  According to the Trust Agreement, the Trustees were to make certain specific

distributions from the trust principal to several individuals, who are not parties to this suit, as

soon as possible after the Decedent's death.  Trust Agreement, 2 (Dkt. No. 32, Ex. B).  The

Trustees were also directed to

> pay any and all debts and obligations of the GRANTOR, the last
> illness, funeral, and burial expenses of the GRANTOR and any
> State and Federal income, inheritance and *estate taxes* which may

---

[2]  Eve H. Smith is the wife of James W. Smith.  She also was named as a defendant in
this matter.  As discussed further below, the Government has failed to state a valid claim against
her.  The court therefore does not include her in its analysis of the liability of the other
defendants.

> then be owing or which may become due and owing as a result of
> the GRANTOR's death.

*Id*. (emphasis added).   After these distributions had been made, the Trustees were to divide a

third of the remaining trust corpus (not to exceed $1,000,000) into four equal parts to be

distributed to four family limited partnerships one of which had been established for each of the

Heirs.  *Id*. at 4.  Finally, the Trustees were directed to distribute the remaining principal and

undistributed income of the trust equally to the Heirs.  *Id*. at 4-5.  The Heirs also received

benefits valued at nearly $370,000 from several life insurance policies belonging to the

Decedent.

In accordance with the Trust Agreement, the Trustees filed a federal estate tax return with

the Internal Revenue Service ("IRS") on June 1, 1992.  The return valued the Decedent's gross

estate at $15,958,765, with a federal estate tax liability of $6,631,448.  *See* United States Estate

Tax Return (Dkt. No. 32, Ex. C).  The bulk of the Estate consisted of 9,994 shares of stock in

State Line Hotel, Inc. (the "Hotel") valued at $11,508,400.  When the return was filed, the

Trustees elected to defer payment of a portion of the federal estate tax liability.[3]  The deferred

tax liability was to be paid in ten annual installments beginning on June 2, 1997 and ending on

June 2, 2006.  After receiving the estate tax return, the IRS properly assessed the Estate for

unpaid estate taxes on July 13, 1992.

On December 31, 1992, the Trustees and Heirs executed an agreement (the "Distribution

Agreement") distributing all the remaining trust assets to the Heirs.  *See* Agreement (Dkt. No.

---

[3]   The Estate made this election pursuant to 26 U.S.C. § 6166(a).  The provision allows
an estate to defer paying part of its estate tax if more than thirty-five percent of an adjusted gross
estate consists of an interest in a closely held business.

32, Ex. G).  With regard to the outstanding federal estate tax liability, the Distribution

Agreement states as follows:

> 6. Liability for Taxes. Each of the BENEFICIARIES
> acknowledges that the assets distributed to him or her will
> accomplish a complete distribution of the assets of the Trust.  A
> portion of the total federal estate tax upon the Estate of Anna
> Smith is being deferred and is the equal obligation of the
> BENEFICIARIES to pay as the same becomes due.  Likewise, if,
> upon audit, additional federal estate taxes or Utah inheritance taxes
> are found to be owing, the responsibility for any such additional
> taxes, interest or penalties will be borne equally by the
> BENEFICIARIES.

*Id*. at ¶ 6.

On May 30, 1995 the IRS issued a Notice of Deficiency against the Estate, determining

that the Hotel shares were worth $15,000,000 at the time of the Decedent's death.  The adjusted

valuation resulted in an alleged additional estate tax of $2,444,367.  The Estate contested the

Notice of Deficiency, and a settlement was ultimately reached where the Estate agreed to pay

additional federal estate taxes in the amount of $240,381.  Thus, the total federal estate tax was

$6,871,829.

In January 2002, the Hotel filed for Chapter 11 bankruptcy in the state of Nevada, and

shortly thereafter, the court approved the sale of all the Hotel's assets to a third party free and

clear of all liens, claims, and encumbrances.  The Heirs received no value for their Hotel shares,

but each received $126,000 annually for signing a two-year non-compete agreement.  The Heirs

also have each reported losses in excess of $1,000,000 in connection with their ownership of the

Hotel stock, which have been used to offset taxable income.

In 2003, the Estate defaulted on its federal estate tax liability, after having paid

$5,000,000 of the total amount due.  In 2005, the IRS sent a notice and demand for payment of

the tax liability to the Estate and the Personal Representatives.  Despite this notice and demand, the Personal Representatives have failed to fully pay the assessments made against the Estate. The IRS has made efforts to collect the taxes due through levies against the Estate, the Trust, and Defendants but has failed to yield any collections.  The action currently before the court is a further attempt by the Government to collect the outstanding tax liability against the Estate.

## LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (quotations and citations omitted).  The court need not, however, consider allegations which are conclusory, or that "do not allege the factual basis" for the claim.  *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").  Moreover, the court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Although all reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citations omitted).  Under this standard, a claim need not be probable, but there must be facts showing more than a "sheer possibility" of wrongdoing.  *Id.*

**ANALYSIS**

**I.       PERSONAL LIABILITY UNDER 26 U.S.C. § 6234(a)(2)**

The Government claims that each Heir is liable for the Estate tax pursuant to 26 U.S.C. § 6324(a)(2).  Section 6324(a)(2) imputes personal liability for federal estate taxes to certain individuals who receive property from an estate at the time of a decedent's death.  The first sentence of section 6324(a)(2) states:

> (2) Liability of transferees and others. If the estate tax imposed by chapter 11 is not paid when due, then the spouse, *transferee*, *trustee* . . . , surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or *beneficiary*, who receives, or has on the date of the decedent's death, property included in the gross estate . . . to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax.

26 U.S.C. § 6324(a)(2) (2010) (emphasis added).  The section lists six distinct categories of individuals who may be personally liable.  The categories that have relevance in this case are "transferee," "trustee," and "beneficiary."  For ease of reference, when the court collectively refers to these categories, the court will refer to them as a "Distributee" or "Distributees."

The Trustees admit they fall within the scope of section 6324(a)(2).  Likewise, the Heirs admit that as beneficiaries of the Decedent's life insurance proceeds, they also fall within the scope of section 6324(a)(2) to the extent of the value of the insurance proceeds.  The Heirs deny, however, that they became Distributees when property from the trust corpus was distributed to them.  They therefore deny all liability arising from their status as trust beneficiaries.

### A.    Transferee Liability

#### i.  *Transferees Under Utah Law*

The Government argues the Heirs are transferees based on common law and Utah law. Under common law, a transferee is anyone "to whom a property interest is conveyed." *Black's Law Dictionary* (7th ed. 1999). Utah law specifies "'the creation of a trust involves the transfer of property interests in the trust subject-matter to the beneficiaries.'" *See Banks v. Means*, 2002 UT 65, ¶ 9, 52 P.3d 1190, *overruled on other grounds by* Utah Code Ann. § 75-7-605 (2012) (quoting George G. Bogert & George T. Bogert, *Trusts & Trustees* § 998 (2d ed. rev. 1983)). Hence, according to the Government, the Heirs are transferees because a property interest in the Trust corpus was conveyed to them upon the mere creation of the Trust, and that property interest was held by the Heirs at the time of the Decedent's death.

The Supreme Court has held that courts should look to state law to determine the scope of liability under some other sections of the tax law. *See Comm'r v. Stern*, 357 U.S. 39, 44-45 (1958); *see also Bergman v. Comm'r*, 66 T.C. 887, 892 (1976); *Magill v. Comm'r*, 43 T.C.M. (CCH) 859 (1983). The same is not true for section 6324(a)(2). Instead, federal "courts have developed a uniform body of federal law defining the nature and effects of [section 6324(a)(2)] liability." *Schuster v. Comm'r*, 312 F.2d 311, 315 (9th Cir. 1962). This makes "an examination of state law unnecessary." *Magill*, 43 T.C.M. (CCH) 859; s*ee also Baptiste v. Comm'r*, 29 F.3d 1533, 1538 (11th Cir. 1994) (stating "section 6324(a)(2) is an independent federal source of liability[,] . . . so there is no reason to look to state law"); *Groetzinger v. Comm'r*, 69 T.C. 309, 316 (1977) ("[S]ection 6324 provides for the substantive liability of the transferees of estates with respect to the estate tax without regard to State law."). While the Government may be

correct in its statement of Utah law, it is improper to rely on state law to define the term

"transferee" for purposes of section 6324(a)(2). The court therefore concludes the Heirs did not

become transferees merely because they were named as trust beneficiaries when the Trust was

created.

### ii. Timing of Trust Distributions

The Government also contends that the Heirs are personally liable for the Estate tax

because they became transferees when property from the trust corpus was distributed to them.

The Heirs argue they cannot be transferees because such property was not distributed to them

immediately upon the date of the Decedent's death.

In *Englert v. Commissioner*, the United States Tax Court held that a transferee "can only

mean the person who 'on the date of the decedent's death' receives or holds the property of a

transfer made in contemplation of, or taking effect at, death." [4]  32 T.C. 1008, 1016 (1959).  *See*

*also Garrett v. Comm'r*, 67 T.C.M. (CCH) 2214, *41 (1994) ("We concluded that, for purposes

of section 827(b), the term 'transferee' applied only to the person who on the date of decedent's

death receives or holds the property of a transfer made in contemplation of, or taking effect at,

death.").  The *Englert* court recognized that the language of the statute could be read in multiple

ways, *see Englert*, 32 T.C. at 1015-16, because it imputes personally liability to a person "who

*receives*, or *has* on the date of the decedent's death, *property* included in the gross estate," 26

U.S.C. § 6324(a)(2) (emphasis added).  The syntax of the clause might suggest that Congress

intended any transferee who receives property that had been in the gross estate, regardless of the

---

[4] *Englert* addressed section 827(b), which is the predecessor to section 6324(a)(2) and
courts have consistently construed them as having the same substantive content. *See Garrett v.
Comm'r*, 67 T.C.M. (CCH) 2214, *35 (1994).

time when he or she receives it, to be personally liable under section 6324(a)(2).  The *Englert* court held, however, that "Congress used the word 'receives' to take care of property received by persons solely because of decedent's death such as insurance proceeds or property which was not in the possession of one of the persons described in section 827(b), . . . at the moment of the decedent's death, but who immediately received such property solely because of the decedent's death."  *Id.* at 1016.

Where there is ambiguity as to the meaning of a tax statute, the court must resolve the issue in favor of the taxpayer.  *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 508 (1932) ("It is elementary that tax laws are to be interpreted liberally in favor of taxpayers and that words defining things to be taxed may not be extended beyond their clear import. Doubts must be resolved against the Government and in favor of taxpayers."); *Duke Energy Natural Gas Corp. v. Comm'r*, 172 F.3d 1255, 1260 n.7 (10th Cir. 1999) ("[I]f doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer.") (quotations and citation omitted); *Higley v. Comm'r*, 69 F.2d 160, 162-63 (8th Cir. 1934) ("[T]he beneficiary is entitled to a favorable construction because liability for taxation must clearly appear.").  Because section 6324(a)(2) may be interpreted in multiple ways, it is ambiguous and must be interpreted in favor of the Heirs.  The court concludes that in order for a person to be a transferee under section 6324(a)(2), the person must have or receive property from the gross estate immediately upon the date of decedent's death rather than at some point thereafter.

### iii.  Trustees Received the Trust Corpus Upon Decedent's Death

Applying this interpretation, case law supports that personal liability for an estate tax does not typically extend to trust beneficiaries because it is the trustee who receives the property

on the date of a decedent's death. *See Englert*, 32 T.C. at 1015 ("It was the 'trustee' of the 1941

trust who 'on the date of the decedent's death' held the property in question and not the [trust

beneficiary].)"; *Garrett*, 67 T.C.M. (CCH) 2214, *43 ("[The trustee] was personally liable for

the payment of the Federal estate tax under section 6324(a)(2). It was the trustee who received

the property included in the decedent's gross estate and it had the legal title, control, and

possession of such property.)"; *see also Higley*, 69 F.2d at 162-63 ("[T]he application of

'transferee' to trust beneficiaries is at least doubtful and the statute in that respect ambiguous. In

such a situation the beneficiary is entitled to a favorable construction because liability for

taxation must clearly appear.)"; *United States v. Detroit Bank & Trust Co.*, No. 20937, 1962 U.S.

Dist. LEXIS 5184, at *5 (E.D. Mich. Feb. 28, 1962) (holding that a beneficiary of a testamentary

trust was not liable under section 6324(a)(2)).

 The Government tries to distinguish *Englert*, *Garrett*, and *Higley* from the case at hand

on the ground that the cited cases deal only with trust beneficiaries who were entitled to income

from the trust on the date of the settlor's debt, as opposed to property belonging to the trust

corpus itself.[5] While the distinction made by the Government is worthy of notice, there is

nothing in the cited cases to suggest that such a distinction was relevant to the courts when

determining the scope of liability imposed on transferees. In fact, none of the cases make the

distinction at all.

_____

[5] The government correctly characterizes the petitioners in *Englert*, *Garrett*, and *Higley* as income beneficiaries, rather than principal beneficiaries, of the trusts in question. However, at least one district court has found it appropriate to extend the same reasoning to principal beneficiaries as well. *See Detroit Bank & Trust Co.*, 1962 U.S. Dist. LEXIS 5184, at *5.

The Government suggests that because the Eighth Circuit in *Higley* noted that trust beneficiaries are often only entitled to income from the trust, it was limiting its rationale to those circumstances. To the contrary, the Eighth Circuit specifically recognized that trust beneficiaries may be entitled to both the income and principal of the trust. *Higley*, 69 F.2d at 163 (noting that a trust beneficiary "may or may not" have "legal title, control, and possession as would afford opportunity to dispose of the property primarily liable for the payment of the tax"). The court held that even though some trust beneficiaries may have an interest in the trust corpus itself, Congress has chosen to avoid having to determine which trust beneficiaries could bear the burden of personal liability for an estate tax by "placing upon the trustee a personal liability." *Id.* at 163.

Like the petitioner in *Englert*, here the immediate right to the trust corpus belonged to the Trustees upon the Decedent's death, not to the Heirs. *See Englert*, 32 T.C. at 1010, 1015. Whatever inchoate property interest the Heirs may have received upon the death of the Decedent did not put them in a significantly better position to bear the burden of being personally liable for the estate tax than the trust beneficiaries in the cases cited above. Contrary to the suggestion of the Government, the Trust Agreement did not give the Heirs an "immediate right to the balance of the corpus of the trust." Pl.'s Opp'n to Mot. to Dismiss, 15 (Dkt. No. 39).[6] Instead, the Trustees were required to pay the expenses, debts, and obligations of the Decedent, including any federal estate tax obligation, prior to any distribution of the trust property to the Heirs. *See* Trust Agreement, 2 (Dkt. No. 32, Ex. B). In addition, the Trust Agreement directed the Trustees

---

[6] When referring to the page numbering of a party's brief, the court is referring to the number at the bottom of the memorandum rather than the number assigned by cm/ecf at the top of the page.

to make several substantial distributions to specified third parties and to four family partnerships prior to distributing any property to the Heirs. *Id*. at 2-4.

Only after the debts and obligations of the Estate were satisfied, and the specific distributions were made, were the Trustees directed to distribute the "remaining principal and undistributed income" of the trust to the Heirs in equal shares. *Id*. at 4. It was not certain that the Heirs would receive any property under the Trust Agreement. Had the Trust corpus been insufficient to meet the debts and obligations of the Estate and the specific distributions described in the Trust Agreement, the Heirs would have received nothing from the Trust. This supports the Heirs are not transferees.

### iv. *Subsequent Transferees*

The Heirs final argument as to why they are not transferees pertains to the statutory construct of section 6324(a)(2). The above analysis addresses the first sentence of the section. The second sentence of the section addresses special estate tax liens, which are not at issue in this case. The second sentence is nevertheless relevant because it provides meaning about who a transferee is under the first sentence. The second sentence of section 6324(a)(2) states:

> Any part of such property transferred by (or *transferred by a transferee of*) such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, to a purchaser or holder of a security interest shall be divested of the lien provided in paragraph (1) and a like lien shall then attach to all the property of such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, *or transferee of any such person*, except any part transferred to a purchaser or a holder of a security interest.

26 U.S.C. § 6324(a)(2) (2010) (emphasis added).

The Heirs argue that because Congress referred to "transferees of transferees" in the second sentence of section 6324(a)(2) and not the first sentence, that such subsequent transferees

were not intended to be liable under the first sentence. Case law supports this interpretation. *See Garrett*, 67 T.C.M. (CCH) 2214, at *41 (rejecting "liability-by-secondary-transfer argument" under section 6324(a)(2)); *Englert*, 32 T.C. at 1016.

While it is conceivable that a "transferee" in the first sentence could be defined to mean an initial transferee of a decedent and any subsequent transferees, such a construction would render references to the "transferees of any such person" in the second sentence of the statute superfluous. Courts favor interpreting the terms of a statute so as to avoid rendering any terms or phrases superfluous. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("We are reluctant to treat statutory terms as surplusage in any setting.") (quotations and citation omitted); *Moskal v. United States*, 498 U.S. 103, 109 (1990) ("[A] court should give effect, if possible, to every clause and word of a statute.") (quotations and citations omitted); *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) ("[A] statute should be interpreted so as not to render one part inoperative.") (quotations and citation omitted); *Lamb v. Thompson*, 265 F.3d 1038, 1051 (10th Cir. 2001) ("[I]t is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section.") (quotations and citations omitted).

Were the court to read the term "transferee" in the first sentence of section 6324(a)(2) to mean both initial and subsequent transferees, references to "transferees of any such person" in the second sentence would be meaningless and superfluous. Congress understood how to refer to a subsequent transferee when they enacted section 6324(a)(2). They did so in the second sentence of the statute at issue. If they intended "transferees of transferees" to be personally liable for an estate tax under the first sentence of the section, they would have made that clear using the same language they used in the second sentence. Because they did not use that

language, it is not proper for this court to expand the meaning of the language that was used. The court therefore concludes that the term "transferee" in the first sentence of section 6324(a)(2) does not apply to subsequent transferees who receive property from a Distributee following a decedent's death. Accordingly, the Heirs are not transferees under section 6324(a)(2).

### B.     Beneficiaries

The Government also asserts that Defendants are "beneficiaries" under section 6324(a)(2). The Defendants concede they are beneficiaries of the Decedent's life insurance policies, and therefore liable for the value of the insurance proceeds distributed to them. They argue, however, that the term "beneficiary" should not be interpreted broadly to mean any recipient of property from the Decedent's gross estate. While the Government asserts that the more common and widely accepted meaning of "beneficiary" is "a person for whose benefit property is held in trust," Black's Law Dictionary (9th Ed. 2009), they do not contest the fact that multiple courts have interpreted "beneficiary" narrowly, such that it only applies to  insurance policy beneficiaries. *Garrett*, 67 T.C.M. (CCH) 2214, at *39 ("[T]he personal liability imposed upon beneficiaries referred only to specific beneficiaries of life insurance."); *Englert*, 32 T.C. at 1014 ("[I]t is obvious the use of the word 'beneficiary' in this section applies only to insurance policy beneficiaries."); *Higley*, 69 F.2d at 162.

As the Tax Court outlined in *Garrett*, the legislative history of section 6324(a)(2) and its predecessors show that Congress was only referring to insurance beneficiaries when it used the term "beneficiary" in the statute. *See Garrett*, 67 T.C.M. (CCH) 2214, at *35-40. Section 827(b) of the Internal Revenue Act of 1939, a predecessor to section 6324(a)(2), states:

> if *insurance* passes under a contract executed by the decedent in
> favor of a specific *beneficiary* . . . then the . . . *beneficiary* shall be
> personally liable for such [estate] tax.

Internal Revenue Code, ch. 3, § 827(b), 53 Stat. 1, 128 (1939) (current version at 26 U.S.C. §

6324(a)(2) (2010)) (emphasis added).  In 1942, Congress amended section 827(b) of the Internal

Revenue Act of 1939, adopting language that is nearly identical to the language currently

encoded in section 6324(a)(2).  *See* Revenue Act of 1942, Pub. L. No. 77-753, sec. 411, §

827(b), 56 Stat. 798, 950 (1942).  In making the amendment, a House Report accompanying the

bill stated:

> Section 827(b), as it now appears in the Code, in imposing
> personal liability for the tax refers only to transfers in
> contemplation of death or intended to take effect in possession or
> enjoyment at or after death, and *life insurance in favor of a specific
> beneficiary*.

*Englert*, 32 T.C. at 1015 (quoting H.R. Rep. No. 77-2333 (1942)); s*ee also* S. Rep. No. 77-1631

(1942).

It is clear that the term "beneficiary" was only meant to refer to insurance beneficiaries

under section 6324(a)(2) and not beneficiaries of a trust.  Because all of the Heirs did receive

proceeds from various life insurance policies held by the Decedent upon her death, they are each

subject to personal liability under section 6324(a)(2) to the extent of the distributions they

received from the policies.

The Government finally argues that if the personal liability assigned by section

6324(a)(2) did not extend to trust beneficiaries, endless abuse and estate tax evasion would

ensue.  These concerns appear overstated.  There is no question that trustees are personally liable

under section 6324(a)(2) when property included in a decedent's gross estate is transferred to a

trust.  Consequently, a trustee would have every incentive to ensure that an estate tax owed by the estate was paid prior to distributing all the assets of the trust.  The trustee's potential liability should help curb the abuses envisioned by the Government.

### C.     Eve H. Smith

The Government asserts that Eve H. Smith "is sued because she was a beneficial transferee of certain assets distributed to her from the Estate through the Trust and [as] a partner of the James W. Smith Family Limited Partnership."  Complaint, ¶ 9 (Dkt. No. 2).  It also asserts that Ms. Smith "is a beneficiary or transferee of the Estate because she received distributions of cash and other assets included in the Decedent's gross estate, personally" and as a partner of in two limited partnerships.  *Id.* ¶ 32.  Although the Government asserts that Ms. Smith received cash and assets, it does not identify any of them.  Nor do the Will and Trust show that Ms. Smith received cash or assets.  Furthermore, she was not a party to the Distribution Agreement. Finally, the assertion that Ms. Smith should bear liability because she was a partner of certain limited partnerships is an even more attenuated argument than that made against the Heirs and direct beneficiaries of the Trust.

During oral argument on the motion to dismiss, the court asked the Government to identify what evidence it had that Ms. Smith was a Distributee.  The Government stated that it needed to conduct discovery to determine her involvement in the limited partnerships.  The law is clear that a party "may not use discovery as a fishing expedition."  *Anthony v. United States*, 667 F.2d 870, 880 (10th Cir. 1981); *see also Szymanski v. Benton*, 289 Fed. Appx. 315, 320-21 (10th Cir. 2008); *Martinez v. True*, 128 Fed. Appx. 714, 716 (10th Cir. 2005).  Moreover, the Government did not sue the limited partnerships.  It sued Ms. Smith in her individual capacity.

The Government has therefore failed to state sufficient facts to show it has a cognizable claim against Ms. Smith at this stage of the litigation.  Accordingly, Ms. Smith is hereby dismissed without prejudice.

### D.     Summary of Defendants' Liability Under Section 6324(a)(2)

As conceded, the Trustees fall within the scope of section 6324(a)(2) to the extent of the value of the property in the trust at the time of the Decedent's death.  Furthermore, the Heirs are "beneficiaries" under section 6324(a)(2) to the extent of the value of the life insurance proceeds they received by virtue of the Decedent's death.  Such beneficiary status does not extend to any other property the Heirs received under the Trust Agreement.  Moreover, the Heirs do not meet the definition of "transferees" under section 6324(a)(2).  Consequently, the defendants are not liable as *trust* beneficiaries or as transferees.

## II.     STATUTE OF LIMITATIONS

### A.     Tax Assessment Against an Estate

Although Defendants concede the Trustees and beneficiaries of the life insurance proceeds would otherwise be subject to liability under section 6324(a)(2), they nevertheless contend the Government is time-barred from pursuing a collection action against them.[7]  To bring an action to collect an estate tax from a decedent's estate, the IRS must first assess the estate for the amount due.  *See* 26 U.S.C. § 6501(a) (2012).  The assessment must be made within three years after the estate's tax return was filed.  *Id.*

---

[7] Defendants likewise contend that even if Defendants were liable as transferees under section 6324(a)(2), the Government would be time-barred from pursing a claim against them. The court notes that its analysis about the statute of limitations applies regardless of whether a Distributee is as a trustee, beneficiary, or transferee.

Following a timely assessment, the IRS can collect the estate tax by levy or by a proceeding in court if the levy or proceeding is initiated within ten years after the assessment. *See id.* § 6502(a). The statutes of limitations for assessment imposed by section 6501 and for collection imposed by section 6502 are suspended "for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court . . . and for 60 days thereafter." *Id.* § 6503(a)(1). Thus, when an estate makes an election to extend the time for payment of an estate tax, the statute of limitations is tolled during the extension period. *See id.* § 6503(d).

In this case, the Estate filed a tax return on June 1, 1992. The IRS timely assessed the Estate on July 13, 1992. Typically, the IRS would then have had ten years (that is until July 13, 2002) to collect the assessed taxes. This period, though, was extended when the Estate elected to defer payment pursuant to 26 U.S.C. § 6166(a). Under that section, an estate may choose to pay the tax liability over ten annual installments, with the first installment commencing five years after the deferral election is made. As a result, the statute of limitations may be tolled for as long as fifteen years from the date of election. The Estate elected this option on the same date it filed its tax return. Rather than tolling the statute of limitations until 2007, however, the statute commenced running again in 2003 when the Estate defaulted in making its annual payment. The Government therefore has until 2013 to commence an action against the Estate to collect the unpaid estate taxes. For purposes of this motion, Defendants do not dispute this conclusion. Mem. in Supp. of Mot. to Dismiss, 22 (Dkt. No. 32).

**B.**     **Tax Assessments Against a Distributee**

*i.  Section 6901's Applicability*

Notably, the present action is not against the Estate.  It is against Distributees of the

Estate, whom the Government has never assessed.  Section 6901 of the Internal Revenue Code

outlines the method and procedure for collecting taxes from transferees who received transferred

assets from an estate.  For purposes of section 6901, the term "transferee" is defined as "donee,

heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes *any* person

who, under section 6324(a)(2), is personally liable for any part of such tax."  26 U.S.C. §

6901(h) (emphasis added).  The term "transferee" is therefore broader under section 6901 than it

is under section 6324(a)(2), and it encompasses the Trustees and the life insurance beneficiaries

in this case.

Section 6901(a) states that the method of assessing and collecting tax from a transferee

shall be done "in the same manner and subject to the same provisions and limitations as in the

case of the taxes with respect to which the liabilities were incurred."  *Id.* § 6901(a).  In other

words, because a transferee's liability for estate tax is derived from the transferor estate, courts

will look to the tax rules that govern the estate when determining liability of the transferee.  *See*

*McKowen v. IRS*, 370 F.3d 1023, 1026-27 (10th Cir. 2004).  The section therefore implies that to

collect tax liability from the Trustees and life insurance beneficiaries, the Government must first

have assessed them in the same manner it assessed the Estate.  Section 6901(a) further provides

that for initial transferees, which the Trustees and beneficiaries are in this case, "[t]he period of

limitations for *assessment* of any such liability of a transferee . . . shall be . . . within 1 year after

the expiration of the period of limitation for *assessment* against the transferor."  26 U.S.C. § 6901(c) (emphasis added).

Upon an initial reading, section 6901 appears to mandate how the IRS may assess and collect taxes from those personally liable under section 6324(a)(2).  The Tenth Circuit, however, has stated that section 6901 is only one method of collecting against transferees because "the collection procedures of § 6901 are cumulative and alternative - - not exclusive or mandatory." *United States v. Russell*, 461 F.2d 605, 607 (10th Cir. 1972) (citations omitted).  As a result, "an individual assessment under 26 U.S.C. § 6901 is not a prerequisite to an action to impose transferee liability under 26 U.S.C. § 6324(a)(2)." *United States v. Geniviva*, 16 F.3d 522, 525 (3d Cir. 1994).

Stated differently, the Government can elect whether to bring an action under section 6324(a)(2) or section 6901.  If it elects to bring it under section 6324(a)(2), it is not subject to the limitation period stated in section 6901.  Instead, section 6502's limitation period applies. *United States v. Russell*, No. KC-2953, 1974 U.S. Dist. LEXIS 6241, at *7-8 (D. Kan. Oct. 17, 1974) (unpublished), *aff'd*, 532 F.2d 175 (10th Cir. 1976) (stating "§ 6502 is the applicable statute of limitations to actions brought under § 6324(a)(2)").  The effect of this election is that the Government can bring an action against a Distributee at any time during the limitations period for collecting against an estate, even where the Government has not made a timely assessment against the person pursuant to section 6901(c).  *See Geniviva*, 16 F.3d at 525; *United States v. Botefuhr*, 309 F.3d 1263, 1281 (10th Cir. 2002) ("[I]f an action could be timely

commenced against a donor under the provisions of § 6501 and § 6502, an action against the donee under § 6324(b)[8] will be considered timely.").

### ii. Section 6503 Interaction with Section 6901

Defendants acknowledge the Tenth Circuit's interpretation of the statute, but they nevertheless contend the law is distinguishable, as applied to them, because the Tenth Circuit has never expressly extended its interpretation to apply to section 6166 deferrals. According to Defendants, when the Estate made a section 6166(a) election, and thus tolled section 6502's limitation period, section 6901 became mandatory and exclusive. To support its argument, Defendants cite to section 6503. Section 6503(d) tolls the statute of limitations for collecting an estate tax "for the period of any extension of time for payment granted under [section 6166]." 26 U.S.C. § 6503(d). Section 6503(k)(3) includes a cross reference that states, "For suspension in case of . . . [c]laims against transferees and fiduciaries, see chapter 71." Chapter 71 of the Internal Revenue Code includes section 6901 through section 6905. Section 6901 is the only section in chapter 71 that addresses any tolling provisions for collecting against a transferee. Thus, Defendants argue that when the Estate elected to defer paying taxes under section 6166(a), section 6503 mandated that the IRS follow the rules under section 6901 rather than 6324(a)(2) for collecting taxes against them.

As previously discussed, section 6901 requires that a transferee be assessed "within 1 year after the expiration of the period of limitation for assessment against the transferor," and

---

[8] Section 6324(b) imposes personal liability for an overdue gift tax on donees to the extent of the value of a gift they received. Courts have determined the personal liability imposed by section 6324(a)(2) and section 6324(b) to be *in pari materia*, and that the two subsections should be construed together. *See Botefuhr*, 309 F.3d at 1276 n. 9 (citing *Estate of Sanford v. Comm'r*, 308 U.S. 39, 44 (1939) (other citations omitted)).

provides for a suspension of the period of limitations on assessment for any "period during which the Secretary is prohibited from making the assessment." 26 U.S.C. § 6901(c)(1), (f). Therefore, according to Defendants, the Government is barred from bringing an action against them under section 6324(a)(2) because the assessment period imposed by section 6901 has run.

Interpreting section 6503 to mean that section 6901 becomes mandatory when a section 6166(a) election is made would yield an anomalous result. In an ordinary case, where a section 6166(a) election is *not* made, the Government may bring a collection action against a section 6324(a)(2) Distributee as long as an action may be brought against the estate itself. Assuming a timely assessment was made against the estate, and no other deferrals occurred, a collection action could be brought against a Distributee up to thirteen years after the estate tax return was filed.[9] This is true regardless of whether the Distributee has been independently assessed or not.

Under Defendant's theory, however, when a section 6166(e) election is made, section 6901 would require an independent assessment of a Distributee within four years of the filing of the estate tax return. If no assessment were made against the Distributee, the Government would be barred from bringing a collection action from that point forward. There is no reason, and Defendants have offered no reason, to suspect that Congress intended a section 6324(a)(2) Distributee, who has not been independently assessed, to be subject to a collection action for up to thirteen years in an ordinary case, but only four years where a section 6166(e) election is made.

---

[9] Section 6501 requires the assessment to be made against the estate within three years of when the tax return was filed. Section 6502(a)(1) requires a collection action to be brought against a taxpayer within ten years after the tax assessment.

Furthermore, Defendants reliance on a cross-reference is indicative of the weakness of their argument that section 6503(k)(3) makes section 6901 the mandatory method of collecting against a Distributee. Statutory cross-references are typically less helpful in conveying meaning than the substantive language of a statute. Indeed, nothing in the language of the cross-reference indicates that Congress had in mind the situation currently facing the court when it adopted section 6503(k)(3).

### iii. Section 6503 Tolling Provision

Next, Defendants argue that even if section 6503 does not make section 6901 mandatory, section 6503(d) should not be read to toll the limitations period for section 6324(a)(2) Distributees. Instead, section 6503(d) should be read only to toll the period for collecting the estate tax because section 6324(a)(2) is a derivative liability and not a tax itself. Section 6503(d) states:

> The running of the period of limitation for *collection of any tax imposed by chapter 11* shall be suspended for the period of any extension of time for payment granted under the provisions of section 6161(a)(2) or (b)(2) or under the provisions of section 6163 or 6166.

26 U.S.C. § 6503(d) (emphasis added). Chapter 11 is the section of the tax code that relates to the taxation of estates. Defendants are correct that section 6324(a)(2) makes Distributees liable for an estate tax, but such liability is not itself a tax. *See Baptiste v. Comm'r*, 29 F.3d 1533, 1542 (11th Cir. 1994) ("Baptiste's liability under section 6324(a)(2) . . . is not a tax liability, but is an independent personal obligation which . . . may be collected in a manner similar to that employed in collecting tax liabilities."); s*ee also United States v. Russell*, 532 F.2d 176 (10th Cir. 1976) ("*Russell II*") ("The government's suit is, in reality, no more than a simple action in

debt."); c*f. Hamar v. Comm'r*, 42 T.C. 867, 877 (1964) (suggesting that while transferee liability "is a liability for a tax," it "may not be a tax liability in the ordinary sense").

Again, however, Tenth Circuit precedent is clear that as long as the period of time is open for collecting against an estate, it is open for collecting against a section 6324(a)(2) Distributee. Thus, even if section 6503(d) does only toll the limitations period for collecting the estate tax, it nevertheless leaves open that period. Because it is undisputed that the period for collecting against the Estate has not run in this case, the IRS may still pursue collection against the Trustees and life insurance beneficiaries.

### iv. Due Process

Finally, Defendants urge the court to adopt their reasoning based on principles of equity and due process. In *Russell II*, the Tenth Circuit cautioned the Government that failure to assess a Distributee may not always be excused simply because an estate received notice. *Russell*, 532 F.2d at 177. Moreover, in *United State v. Schneider*, the District of North Dakota rejected the holding in the *Russell* cases because it determined that adopting "the government's position denies taxpayers the fundamental due process that the assessment provisions of the Internal Revenue Code were meant to afford." No. A1-89-197, 1992 U.S. Dist. LEXIS 21588, at *2-3, 7 (D.N.D. June 8, 1992). Such concerns are enhanced when a section 6166(a) deferral could allow the Government to seek collection of an estate tax against a Distributee up to twenty-five years after an estate tax return was filed.

Hence, a question remains whether equity or due process can militate against collecting taxes from a Distributee. The court does not reach this issue, however, because the facts of this case support that Defendants had clear and early notice that the Estate's taxes had not been fully

paid and that they may be personally liable. Defendants acknowledged this obligation in a binding contract. Due process is therefore not at issue. Nor do principles of equity demand that the risk Defendants undertook be shifted to the Government in this case. Accordingly, the court hereby denies Defendants' motion to dismiss the first cause of action against the Trustees and life insurance beneficiaries.

## III.      FIDUCIARY LIABILITY UNDER 31 U.S.C. § 3713

The Government's final claim is that Johnson and Smith, as personal representatives of the Estate, are liable for the Estate tax at issue, pursuant to 31 U.S.C. § 3713(b). Section 3713(b) states:

> A representative of a person or an estate . . . paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713(b) (2010). Consequently, when an estate is insolvent or has insufficient assets to pay its debts, a personal representative must give priority to the United States and pay that liability first. If it does not do so, the representative may be personally liable.

Because of the "statute's broad purpose of securing adequate revenue for the United States Treasury, courts have interpreted it liberally." *United States v. Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996). The statute has been applied even when a distribution from an estate "is not, strictly speaking, the payment of a debt." *Id.* "Thus, if an executor . . . distributes any portion of the estate before all of its tax is paid, he or she is personally liable, to the extent of the payment or distribution, for so much of the tax that remains due and unpaid." *United States v. First Midwest Bank/Illinois, N.A.*, No. 94-C-7365, 1997 U.S. Dist. LEXIS 16913, at *56 (N.D. Ill. Oct. 27, 1997) (quotations and citation omitted) (hereinafter "*First Midwest*").

Here, Johnson and Smith admit they distributed assets from the Estate prior to satisfying the Government's tax claim. They contend, however, that they are not personally liable because the Estate had sufficient assets to pay the tax at the time the distributions were made. Johnson and Smith point to the Distribution Agreement to support their contention because the Heirs agreed, under that document, to pay the Estate tax as it became due. Since the Estate had this "right of contribution" from the Heirs, Johnson and Smith claim this constitutes a sufficient asset for them to avoid liability. They cite *Schwartz v. Commissioner of Internal Revenue*, 560 F.2d 311 (8th Cir. 1977) to support their contention.

In *Schwartz*, the Tax Court had evaluated the assets and liabilities of an estate and concluded that the estate was insolvent at the time the executor made distributions from it. When discussing the estate's liabilities, the Tax Court failed to account for the right of contributions from third parties for the payment of notes owed by the estate. Third parties had made payments on the notes, so "the right of contribution was of some value." *Id.* at 317. In that context, the Eighth Circuit stated, "[i]t is well settled that the obligation of a third party, which the estate has agreed to pay or has given collateral for, is a liability of the estate with any right of contribution from the third party representing an asset of the estate." *Id.*

Contrary to this rule, the Tax Court had counted the notes as an obligation of the estate, but failed to offset that liability by the third parties' contributions to pay off that liability. *Id.* The Eighth Circuit therefore reversed the Tax Court because it found the court had "both understated the amount of the estate's assets and overstated the amount of its liabilities." *Id.* at 317. Notably, the estate did not assume the liabilities in an effort to divest itself of all assets.

When the estate assumed the liabilities, it also received the third party contributions. Moreover, the estate had recourse against the third parties for payment on the notes.

In contrast, the Distribution Agreement states that most of the assets of the estate had already been transferred before the agreement was ever entered. The remaining assets consisted of about $523,016.90 in cash; a note for $18,500; and real estate valued at $199,170 for estate tax purposes. Distribution Agreement, at 1. Rather than applying these assets to the tax liability, Johnson and Smith distributed the assets to themselves and two relatives, with the acknowledgment that the distribution would "accomplish a complete distribution of the assets of the Trust." *Id.* ¶ 6. Even payments on the note were distributed to the Heirs and not the Estate.

Furthermore, the Distribution Agreement is ambiguous as to whether the Estate was a party and had recourse against the Beneficiaries as third party contributors. Although the Distribution Agreement stated that Johnson and Smith were acting as Trustees and Personal Representatives, the document was signed by them only as Trustees and Beneficiaries. They did not sign as Personal Representatives of the Estate. Thus, it is not clear whether the Estate has the right to enforce the Distribution Agreement or whether only Johnson and Smith have the right to enforce the agreement.

If the Estate does not have the right to enforce the Distribution Agreement, then the agreement may be properly interpreted as a "hold harmless agreement" to protect Johnson and Smith, as Trustees, from personal tax liability should the Heirs fail to pay the estate tax. This uncertainty creates an issue of fact that must be further developed and dismissing the claim under Rule 12(b)(6) would be improper because all factual inferences must be drawn in favor of the Government. Finally, even though the agreement states the Heirs would bear the responsibility to

pay the taxes, this is not the "right of contribution" contemplated by *Schwartz*. Indeed, other courts have found such agreements to be immaterial when determining liability under section 3713(b).

In *United States v. Coppola*, 85 F.3d 1015 (2d Cir. 1996), an estate had been assessed estate taxes. Rather than paying the estate taxes, an executor distributed the estate's assets to himself and two other relatives. As part of the distribution, the parties entered into an agreement that required each of them "to pay any estate taxes due in proportion to the value of the assets each received." *Id.* at 1017. Nevertheless, the trial court held that the executor was personally liable because the distributions depleted the estate's assets in violation of section 3713(b). *Id.* at 1018. The Second Circuit agreed. *Id.* at 1020.

Similarly, in *First Midwest*, an executor argued it was not personally liable because it had been a party to a settlement agreement wherein an heir had assumed responsibility to pay the outstanding estate taxes. *First Midwest*, 1997 U.S. Dist. LEXIS 16913, at *17-18. When the heir failed to pay the taxes, the Government brought an action against the executor. The executor argued the settlement agreement had released the executor from liability because it had made "adequate provision for the payment of the taxes." *Id.* at *58. The court disagreed. Moreover, it noted that "[n]o other court has found under any circumstance that such an agreement relieves an executor of liability for unpaid taxes." *Id.* at *58-59. The court also stated that the duty to pay estate taxes was not delegable under section 2002. *Id.* at *53 (citation omitted). Previously this court addressed this duty to pay estate taxes and stated that insolvency is viewed from the perspective of whether the estate impermissibly attempted to delegate tax

obligations. It is unnecessary, however, for this court to determine whether the obligation of the Estate to pay taxes could properly be delegated by the fiduciaries in this case.

There remains a factual dispute for the fact finder to determine whether the Distribution Agreement is a viable asset sufficient in value to offset liabilities and whether the Distribution Agreement provided the Estate with proper recourse to enforce payment of estate taxes. If the Distribution Agreement leaves the Estate with insufficient assets, then the liabilities would exceed the assets of the Estate and it would be considered insolvent according to a "balance sheet" test. Thus, the Government has made a plausible claim that the Estate was rendered insolvent by the Distribution Agreement, which is all that is necessary to survive a Rule 12(b)(6) motion to dismiss.

In this case, the individuals who distributed the Estate's assets accepted the risk that the Heirs may fail to pay the tax. Now that the risk has been realized, the Government may proceed on its claim against the Personal Representatives. Because the Government has stated a cognizable claim under section 3713(b),[10] the court denies the motion to dismiss this cause of action.

---

[10] In a footnote, Defendants argue the Government's section 3713(b) claim must be limited in scope because the Complaint only asserts a claim against Johnson and Smith in their capacity as personal representatives and not as trustees. Because this argument has not been fully developed, the court will not address it as this time. The court notes, however, that the Government has been put on notice about this potential deficiency.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.[11] The court dismisses Eve H. Smith without prejudice. Additionally, the court dismisses any action against the remaining Defendants as transferees or *trust* beneficiaries under section 6324(a)(2). The court denies the motion to dismiss the first cause of action, however, against the Trustees and against the life insurance beneficiaries to the extent of the value they received under the insurance policies. The court also denies the motion to dismiss the second cause of action.

DATED this 29th day of July, 2013.

BY THE COURT:

Clark Waddoups
United States District Judge

---

[11] Dkt. No. 31.