UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs.<br><br>v.<br><br>MARY CAROL S. JOHNSON; JAMES W. SMITH; MARIAN S. BARNWELL; BILLIE ANN S. DEVINE; and EVE H. SMITH<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER RE LITIGATION FEES AND COSTS**<br><br><br>Case No. 2:11-cv-00087<br><br>Judge Clark Waddoups |

Defendants Mary Carol S. Johnson and James W. Smith seek recovery of reasonable litigation fees and costs pursuant to 26 U.S.C. § 7430. For the following reasons, defendants' motion is granted and defendants are awarded $285,648.06 in attorney's fees and $30,558.00 in expert witness report costs.

## STATEMENT OF FACTS

On January 21, 2011, the United States filed a complaint against the children of Anna S. Smith, seeking collection of an estate tax deficiency owed by her estate as a result of her death in in 1991. Defendants filed a motion to dismiss on April 1, 2011 on the grounds that the government's claims were time-barred; that 26 U.S.C. § 6324(a)(2) largely did not impose personal liability upon them as beneficiaries, other than as to their receipt of insurance proceeds; and that they are not subject to fiduciary liability under 31 U.S.C. § 3713 because the estate had sufficient assets to pay the outstanding tax liability at the time the estate proceeds were distributed to the beneficiaries via a Distribution Agreement. The court granted in part and

1

denied in part defendants' motion to dismiss on July 29, 2013, allowing the government's section 6324 claims against the trustees and life insurance beneficiaries to proceed, and concluding that the government had stated a claim for fiduciary liability under section 3713.

On July 31, 2013, the United States filed an Amended Complaint, adding a claim seeking to foreclose against the Distribution Agreement as well as a claim as a third party beneficiary of the Distribution Agreement. Defendants answered the Amended Complaint on August 27, 2013, asserting defenses to include the expiration of the statute of limitations as to the government's interest as a third party beneficiary to the Distribution Agreement and that the government's section 6324(a)(2) claims are barred because the property was not included in the gross estate under any of sections 2034 through 2042 of the Tax Code. The parties filed cross motions for partial summary judgment on the government's first cause of action, namely whether Johnson and Smith, as successor trustees of the Trust, were personally liable for unpaid estate taxes under 26 U.S.C. § 6324(a)(2). The court initially granted summary judgment in favor of the government on this claim and granted defendant's motion to amend their answer.

In the Amended Answer filed October 17, 2014, defendants asserted a defense that section 3713 liability was discharged in August 1997 pursuant to 26 U.S.C. § 2204 as a result of their tender of a special lien under 26 U.S.C. § 6324A. Defendants also filed a motion asking the court to reconsider its section 6324(a)(2) summary judgment ruling in the government's favor and instead find that trust assets were included in the gross estate under 26 U.S.C. § 2033. Following significant additional briefing, the court issued its final decision on December 1, 2016, finding for the defendants on all issues except for the liability of defendants Johnson and Smith for one quarter of their mother's life insurance benefits each received. On May 1, 2017, defendants filed a motion for attorney's fees and costs under 26 U.S.C. § 7430. The parties each

subsequently appealed the court's December 1, 2016 memorandum decision. While the case was on appeal, the court declined to resolve the motion for attorney's fees until, at the parties' request, a status conference was held on December 13, 2017. At that time, both parties indicated it would be helpful to their appellate mediation efforts if the court decided the motion. The court now proceeds to do so.

**MOTION FOR ATTORNEY'S FEES AND COSTS**

Section 7430(a) provides that in a "court proceeding which is brought by . . . the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment . . . for . . . reasonable litigation costs incurred in connection with such court proceeding." A "prevailing party" is a party other than the United States, with a net worth of less than $2 million at the time the proceeding was commenced,[1] who "has substantially prevailed with respect to the amount in controversy, or has substantially prevailed with respect to the most significant issue or set of issues presented." 26 U.S.C. § 7430(c)(4)(A).

The United States does not dispute that defendants Johnson and Smith have prevailed on both the amount in controversy and on the most significant issues or set of issues presented. (U.S. Opp'n to Mot. for Atty. Fees, ECF No. 201.) The United States also does not challenge the factual allegations in the Johnson and Smith affidavits asserting that they each had a net worth of less than $2 million at the time this proceeding commenced. (*Id.*)

Section 7430(c)(4)(B) provides, however, that "a party shall not be treated as the prevailing party . . . if the United States establishes that the position of the United States in the proceeding is substantially justified." The statute further goes on to state that the United States'

---

[1] 28 U.S.C. § 2412(d)(2)(B) sets forth the net worth requirement for an individual, which is made applicable to the definition of prevailing party found at 18 U.S.C. § 7430(c)(4)(A)(ii).

position should be presumed "not to be substantially justified if the Internal Revenue Service did not follow its applicable published guidance . . . ." 26 U.S.C. § 7430(4)(B)(ii). Applicable published guidance is defined as "regulations, revenue rulings, revenue procedures, information releases, notices, and announcements" as well as "private letter rulings, technical advice memoranda, and determination letters" that are issued to the taxpayer." 26 U.S.C. § 7430(4)(B)(iv). In addition, the Supreme Court has defined "substantially justified" as "justified to a degree that could satisfy a reasonable person," or in other words, having a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). *See also Anthony v. U.S.*, 987 F.2d 670, 674 (10th Cir. 1993). In making the determination about whether the United States' positions were substantially justified, "the district court must look at all facts and circumstances as well as the legal precedents relating to the case." *Pate v. U.S.*, 982 F.2d 457 (10th Cir. 1993). "The government's failure to prevail in the underlying litigation does not make its position necessarily unreasonable, but it remains a factor" for consideration. *Anthony*, 987 F.2d at 674.

### A. Substantially Justified

Defendants' fee request segregates the fees according to claim. Specifically, defendants do not seek fees related to statute of limitations, transferee liability, discovery, or otherwise uncategorized issues. Instead, their fee request is limited to the following issues on which they substantially prevailed: (a) that the trust assets were not included in the gross estate of Anna S. Smith under one of 26 U.S.C. §§ 2034 to 2042, so therefore there could be no transferee liability under section 6324(a)(2); (b) that a section 6324A special lien had in fact been furnished to the IRS, which wrongfully rejected it, and therefore Carol Johnson and James Smith were entitled to discharge under section 2204 as a matter of law; and (c) that the government's attempts to

enforce the Distribution Agreement and foreclose its tax lien were untimely or otherwise improper. The court will address each issue in turn as to whether the government's position was substantially justified.

1. <u>The government's position with regard to the discharge of Johnson and Smith's fiduciary liability was not substantially justified</u>.

The government argues that defendants could not have received a valid discharge of personal liability under § 2204 as a result of furnishing a valid § 6324A special lien because defendants "never made a written application for discharge," and because "the IRS never accepted the defendants' proposed § 6324A lien." (U.S. Opp'n 5-6, ECF No. 201.) The government has never been able to identify any "form, method, procedure, or policy by which a 'written application'" is properly made, nor point to "section 2204 or any applicable authorities or regulations [that] require a specific format, form, or wording to make an application for discharge." *United States v. Johnson*, 224 F. Supp.3d 1220, 1237-38 (D. Utah 2016). This is nearly fatal to the government's claim that it had a reasonable basis in law and fact for its position. The government has nevertheless repeatedly asserted that a written application other than the one it received was required and that without one the court could not find that defendants had substantially complied with the application requirement pursuant to *Baccei v. United States*, 632 F.3d 1140, 1145-46 (9th Cir. 2011).

In the court's view, the government's reading of and reliance on *Baccei* for this position is not reasonable, especially in light of its failure to otherwise identify a "proper" method of making a written application. The government cites *Baccei* for the proposition that "the doctrine of substantial compliance can have no application in the context of a clear statutory prerequisite that is known to the party seeking to apply the doctrine." *Id.* at 1145. *Baccei*, however, goes on to state that "substantial compliance with regulatory requirements may suffice when such

5

requirements are procedural and when the essential statutory purposes are fulfilled." *Id.* Furthermore, *Baccei* clarifies that "A taxpayer may be relieved of perfect compliance with a regulatory requirement when the taxpayer has made a good faith effort at compliance . . . and (1) the regulatory requirement is not essential to the tax collection scheme but rather is an unimportant or relatively ancillary requirement or (2) the regulatory provision is so confusingly written that it is reasonably subject to conflicting interpretations." *Id.* (internal quotations omitted.) *Baccei* thus placed the government on notice that in the absence of a "clear statutory prerequisite that is known to the party seeking to apply the doctrine," combined with the government's utter inability to identify any "proper" form or method of providing a written application for discharge, its position on this point was not substantially justified.

As for its position that the IRS was substantially justified in rejecting the defendants' proposed § 6324A lien, the government still assumes that it had discretionary authority not to accept closely held stock as collateral under § 6324A. It cites the court to a footnote in a Tenth Circuit case that states that a litigation position is not necessarily unjustified based on a finding that an agency's actions have been arbitrary and capricious. *See Mid-Del Therapeutic Center, Inc. v. C.I.R.*, 30 Fed. Appx. 889 n.3 (10th Cir. 2002). This argument misses the point. Here, the court did not evaluate whether the IRS arbitrarily or capriciously rejected the defendants' proposed § 6324A lien; thus, this case law is inapplicable. The government vaguely asserts that its position that it had the discretion to reject the special lien was otherwise "supported by reference to the applicable statutes and regulations, case law, and facts," (U.S. Opp'n 8; ECF No. 201), but fails to identify what these are and provide an explanation as to why this position was reasonable. Instead, the court concluded that the government's legal arguments on these issues repeatedly contradicted its own published guidance, misinterpreted the plain language of statutes

and regulations, ignored relevant provisions of other statutes and regulations, and conflicted with the undisputed purpose of section 6166. *See Johnson*, 224 F. Supp.3d at 1238-43. Because the government has not demonstrated that its position on section 2204 discharge as a result of the section 6324A special lien had a reasonable basis in fact or law, the defendants should be awarded attorney's fees for all aspects of their defense to section 3713 claims.[2] The defendants' request for the costs of Jeffery S. Pickett's expert report is directly related to these claims and should also be granted.[3] The report was necessary to establish the value of the trust assets for purposes of the insolvency test under section 3713 and to establish the value of the stock for purposes of the special lien under section 6324A.

2. The government's position with regard to Johnson and Smith's liability as trustees under section 6324(a)(2) was not substantially justified.

Although this issue was a difficult one for the court during the litigation, the court concludes that the government's position that trust assets were included in the gross estate pursuant to one of the transfer sections, §§ 2034-2041, was not substantially justified. Defendants argue that this entire issue was moot because their alleged liability under section 6324(a)(2) had already been discharged as a matter of law when they furnished the special lien. (Def.'s Mot. 4; ECF No. 198). The court did not decide this issue, however, and does not do so now. While the defendants acknowledge that "the question of the proper code section of

---

[2] Regardless of any potential merit to the government's position on the underlying section 3713 claim in the absence of discharge, the fiduciaries had already been discharged as a matter of law and should not have been required to defend themselves many years later with respect to section 3713 liability.

[3] Defendants correctly point out that the United States' expert report did not meet its own burden to show that the value of the closely held stock was of insufficient or uncertain value, nor did it even attempt to offer an opinion on its value. The absence of this proof—or an attempt by the government to provide such proof—also supports the court's conclusion that the United States' position was not substantially justified.

inclusion was a novel issue," (*id.*), the government's defense of this position merely restates their litigation position, without demonstrating why their position was reasonable.

In particular, the government continues to assert that its "transfer" arguments were reasonable without addressing the court's conclusion that this position was inconsistent with the IRS statutory scheme and contradicted both IRS Technical Advice Memorandum 89-40-003 and IRS Revenue Ruling 75-553. *Johnson*, 224 F. Supp. 3d at 1232-34. 26 U.S.C. § 7430(c)(4)(B)(ii) provides that "the position of the United States shall be presumed not to be substantially justified if the Internal Revenue Service did not follow its applicable published guidance." Although the statute allows this presumption to be rebutted, the court concludes that the government's arguments fail to do so. Under the IRS statutory scheme, the only potentially applicable transfer sections (§§ 2036 and 2038) require beneficial ownership to have been given away while at the same time retaining some of the value of what has been given away. The government has not presented any factual or legal arguments that reasonably support a conclusion that Anna S. Smith divested herself of the beneficial ownership of her trust assets during her lifetime. Instead, its arguments directed the court's attention away from this critical fact. Because the government has not demonstrated that its position on trustee liability pursuant to 26 U.S.C. § 6324(a)(2) had a reasonable basis in fact or law, the defendants should be awarded attorney's fees for all aspects of their defense to these claims.

    3.    <u>The government's attempts to enforce the Distribution Agreement and foreclose its tax lien were not substantially justified</u>.

The government argues that it had a reasonable basis in both law and fact to seek enforcement of the terms of the Distribution Agreement and to foreclose its tax lien. In the court's view, however, the government sat too long on its right to enforce the Distribution Agreement and failed to acknowledge its own numerous mistakes in releasing its tax lien twice

and improperly attempting to revoke the liens it had previously released, let alone that defendants' furnishing of a valid section 6324A lien required the IRS to release the tax lien such that there was no lien to foreclose. This parade of legal and factual errors by the government is not justified as being reasonable by simply reciting to the court the same arguments it made during the litigation. The government's position ignored that it necessarily stood in the position of a third party beneficiary to the Distribution Agreement—rather than in its sovereign capacity—in its attempt to collect the unpaid tax. Similarly, it is not reasonable for the government to argue that the responsibility for its own numerous tax lien errors and lapses should be shifted onto the taxpayer as it did here. Accordingly, the government has failed to persuade the court that its position on these issues was substantially justified as factually or legally reasonable.

      **B.    Reasonable Litigation Costs**

Defendants seek an award of $285,648.06 in attorney's fees and $30,558.00 for the cost of the Pickett report, for a total award of $316,206.06. As previously mentioned, the defendants have not sought attorney's fees for issues upon which the government may have had substantial justification for its positions, or for time spent by counsel upon which defendants received a fee discount. The fees requested have been limited to the 26 U.S.C. § 7430(c)(4) statutory billing rates for the years 2011-2017 where actual billing rates were higher than the statutory rate, and reduced to the actual billing rates where they were lower than the statutory rate.

The government argues that the attorney fees are too high for a case that did not go to trial, and that they include hours that were "unnecessary, irrelevant and duplicative," citing eight motions for permission to file an over-length brief, a motion for an extension of time, and fees for more than one attorney working on the case on the same matter. (U.S. Opp'n 10; ECF No.

201.) Other than these examples and general assertions, the government has not identified specific problematic entries or any amount of fees they believe the court should reduce.

Defendants argue that the density and complexity of the subject matter—the U.S. Tax Code—was the primary reason for the case's expense. Because of that complexity, they argue that additional pages were necessary to present their positions to the Court, upon which they ultimately prevailed. Defendants also argue that their lengthy and thorough memoranda may not have been necessary had the government not "repeatedly misunderstood, ignored, and misapplied the provisions of the Tax Code, associated regulations, and it's agency's own guidance and decisions." (Reply 8, ECF No. 211.) Defendants also argue that the government's resistance to defendants' legitimate attempts to raise meritorious theories by way of an amended answer and the submission of an expert report increased defendants' fees, as did the supplemental briefing required by the government's submission of a rebuttal report. Finally, defendants argue that their case was staffed primarily by a tax attorney and a litigator, with assistance from attorneys with lower billing rates, and that this combination was effective and efficient. In recognition of the reality that some duplication occurred, defendants point out that along the way counsel voluntarily applied significant discounts—a total of 295 hours over the course of the litigation—to reduce defendants' fees. The court finds that the attorney's fees requested were reasonably incurred over a long time period (2011-2017), have been appropriately calculated, and reasonably reduced to account for duplication. Furthermore, the actual amount defendants seek here is $253,000 less than what they actually paid their attorneys.

As for the cost of the defendant's expert witness report, the government argues that it should not be awarded because its own rebuttal report claimed the Pickett report contained "a host of fundamental flaws that make its conclusion misleading and unreliable." (U.S. Opp'n 11,

ECF No. 11.) If the court does award the cost of the Pickett report, the government argues that Mr. Pickett's fees should be limited to the statutory rate cap applicable to attorneys' fees. (*Id.*) The court disagrees with the government. The report was relevant, necessary, and helpful to the court. Furthermore, the statutory rate cap does not apply to experts—as opposed to attorneys—in tax cases, and the government has not argued that Mr. Pickett's hourly rate was otherwise unreasonable.

## CONCLUSION

Based on the foregoing analysis, the court grants defendants' § 7430 motion for attorney's fees and costs. Defendants are hereby awarded $285,648.06 in attorney's fees and $30,558.00 in expert witness report costs. The total award is $316,206.06.

SO ORDERED this 8th day of January, 2018.

BY THE COURT:

_Clark Waddoups_
_____
Clark Waddoups
United States District Judge